FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 11 2010

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**STATE OF ARKANSAS** *ex rel.*
**DUSTIN McDANIEL**, Attorney General                           **PLAINTIFF**

v.                              Case No. _4 · 1 0 - C V - 0 3 7 8_ ▮▮▮▮▮

**U.S. FIDELIS, Inc.**, f/k/a
**NATIONAL AUTO WARRANTY**
**SERVICES, INC.; DARAIN E. ATKINSON;**
and **CORY C. ATKINSON**                                    **DEFENDANTS**

This case assigned to District Judge *Wright*
and to Magistrate Judge *Kearney*

---

## COMPLAINT

---

COMES NOW the State of Arkansas, ("the Plaintiff" or "the State") *ex rel.* Dustin McDaniel, Attorney General, and for its Complaint against U.S. Fidelis, Inc., f/k/a National Auto Warranty Services, Inc., Darain E. Atkinson, and Cory C. Atkinson, states and alleges as follows:

### I.   INTRODUCTION

1.      This is a civil action brought pursuant to the Telemarketing and Consumer Protection Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101, *et seq.*, the Telemarketing Sales Rule, 16 C.F.R. § 310, the Telephone Consumer Protection Act, 47 U.S.C. § 227, 47 C.F.R. § 64.1200, the Arkansas Consumer Telephone Privacy Act, ARK. CODE ANN. § 4-99-401, *et seq.*, the Caller Identification Blocking by Telephonic Sellers Act, ARK. CODE ANN. § 4-99-301, *et seq.*, the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, *et seq.*, and ARK. CODE ANN. § 5-63-204.

2.      The State seeks an injunction against USF, Darain Atkinson, and Cory Atkinson, (referred to collectively as "the Defendants") requiring them to cease: (1) placing telemarketing calls to Arkansas residents enrolled in the national "Do-Not-Call" registry

1

maintained by the Federal Trade Commission ("FTC"); (2) causing to be displayed a fictitious or misleading telephone number on Arkansas residents' telephone caller identification services; and (3) utilizing an automated system for the selection and dialing of telephone numbers in the sale or attempted sale of goods and services.

3.      The State further seeks the imposition of civil penalties upon the Defendants for the violations of the Telephone Consumer Privacy Act, the Arkansas Consumer Telephone Privacy Act, the Caller Identification Blocking by Telephonic Sellers Act, and the Arkansas Deceptive Practices Act outlined herein.

## I.   PARTIES

4.      Plaintiff in this action is the State of Arkansas, *ex rel.* Dustin McDaniel, Attorney General of Arkansas ("the State" or "the Plaintiff"). Attorney General McDaniel is the chief legal officer of the State of Arkansas. Pursuant to 15 U.S.C. § 6103, the State may seek civil enforcement of the Telemarketing and Consumer Fraud and Abuse Prevention Act and the regulations promulgated thereunder. Pursuant to 42 U.S.C. § 227(f)(1), the State may seek enforcement of the Telephone Consumer Protection Act and the regulations promulgated thereunder. Likewise, pursuant to ARK. CODE ANN. § 4-88-104, and ARK. CODE ANN. § 5-63-204(c)(1), the State may seek civil enforcement of the Arkansas Consumer Telephone Privacy Act, the Caller Identification Blocking by Telephonic Sellers Act, the Arkansas Deceptive Trade Practices Act, and ARK. CODE ANN. § 5-63-204.

5.      Defendant U.S. Fidelis, Inc., f/k/a National Auto Warranty Services, Inc. d/b/a Dealer Services, ("USF"), is a Missouri corporation with its principal place of business located at 100 Mall Parkway, Wentzville, Missouri 63385. USF is registered with the Arkansas Secretary of State as a Foreign For Profit Corporation, and the registered agent for

2

service is National Registered Agents Inc. of Arkansas, 455 W. Maurice Street, Hot Springs, Arkansas 71901.

6.      Defendant USF formerly conducted business under the name "National Auto Warranty Services, Inc." until it changed its name on January 22, 2009.

7.      During all times relevant to the Complaint, USF additionally used the d/b/a name of "Dealer Services."

8.      Defendant Darain E. Atkinson ("Darain Atkinson") is an individual and the President, Treasurer, Director, and a 50 percent shareholder of USF. Darain Atkinson is a Missouri resident and currently resides at 5 Lakeview Court, Lake Saint Louis, Missouri 63367.

9.      Defendant Cory A. Atkinson ("Corey Atkinson") is an individual and the Vice-President, Secretary, Director, and a 50 percent shareholder of USF. Defendant Cory Atkinson is a Missouri resident and currently resides at 302 Atkinson Way, Wentzville, Missouri 63385.

10.     Defendants Darain and Cory Atkinson are being sued in their individual capacity as well as in their capacity as officers and directors of Defendant USF.

11.     On information and belief, Defendants Darain and Cory Atkinson, at all times relevant to the circumstances alleged in the Complaint, operated, controlled, and directed the business activities of Defendant USF, causing, personally participating in, and ratifying the acts and practices of Defendant USF as described in this Complaint.

## II.   JURISDICTION

12.     This Court has jurisdiction over portions of this action under 15 U.S.C. § 6103(a), which provides, in part: "Whenever an attorney general of any State has reason to

3

believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the [Federal Trade] Commission under section 6102 of this title, the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States …." A further basis for jurisdiction may be found under 47 U.S.C. § 227(f)(2), which provides, in part: "The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under [the Telephone Consumer Protection Act]."

13.     As to the remaining portions of this action, this Court has jurisdiction under 28 U.S.C. § 1367(a), which provides, in part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), which provides, in part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same district, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." Under the terms of 28 U.S.C. § 1391(c), a "corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Venue is also proper in this Court pursuant to 47 U.S.C. § 227(f)(4), which provides, in part: "Any civil action brought under [the Telephone Consumer

Protection Act] in a district court of the United States may be brought in the district wherein the defendant … transacts business or wherein the violation occurred or is occurring[.]"

## III.  FACTUAL ALLEGATIONS

15.    USF, either on its own or through another person, placed outbound telephone calls to consumers within the State of Arkansas.

16.    The purpose of these calls was to offer what USF purported to be extended automobile warranties to Arkansas consumers.

17.    Such a practice of placing telephone solicitations to consumers within the State of Arkansas constitutes both telemarketing and a telephone solicitation.

18.    This offer of extended automobile warranties is an offer of goods or services.

19.    When making these calls to consumers, sales agents for USF neither selected nor dialed individual telephone numbers. USF used an automated system for the selecting and dialing of telephone numbers.

20.    The System used by USF employed a prerecorded message to the consumers.

21.    The prerecorded messages used by USF failed to clearly disclose either the identity of USF or USF's actual telephone number.

22.    The calls placed to consumers in the State of Arkansas by or on behalf of USF appear to have originated from a number of sources, all outside the State of Arkansas.

23.    All, or virtually all, calls placed to consumers in the State of Arkansas by or on behalf of USF have been interstate telephone calls.

24.    USF has called, or caused to be called, both cellular and residential telephone lines as part of its efforts to offer extended automobile warranties to Arkansas consumers.

25.     USF has not accessed the list of telephone numbers on the national "Do-Not-Call" registry maintained by the FTC for any of the area codes for the State of Arkansas.

26.     USF has called, or caused to be called, numerous Arkansas consumers who have registered their telephone numbers on the national "Do-Not-Call" registry maintained by the FTC.

27.     These Arkansas consumers have not provided USF an express agreement, in writing, of the consumers' authorization that telemarketing calls could be placed to their telephone numbers by USF.

28.     Furthermore, these Arkansas consumers have no established, prior, or existing business relationship with USF.

29.     Based upon information available from caller identification devices, calls made by, or on behalf of, USF have appeared to originate from a variety of area codes. However, in most cases, USF has caused to be displayed a fictitious or misleading telephone number on the caller identification service of Arkansas consumers. On information and belief, it appears that many of the calls placed by or on behalf of USF originated from the State of Florida.

30.     USF's prerecorded telemarketing calls purport to allow consumers to select whether to receive more information on extended warranties, or to automatically be placed on USF's internal do-not-call list.

31.     In their telemarketing operations, USF failed to place consumers' telephone numbers on a list of individuals who wished not to be contacted. When consumers sought to be placed on USF's internal do-not-call list, they were disconnected or hung up on.

32.     At all times relevant to the Complaint, Defendants Darain Atkinson and

Cory Atkinson were officers, directors, and shareholders of the Defendant USF.

33.     As a result of their positions, Darain Atkinson and Cory Atkinson were

responsible for the day-to-day operations of USF.

34.     Both Darain Atkinson and Cory Atkinson knew or should have known that

USF engaged in the unconscionable, illegal, and deceptive trade practices alleged herein.

## IV.   VIOLATIONS OF LAW

### A. Telemarketing and Consumer Fraud and Abuse Prevention Act and 16 C.F.R. § 310

35.     The State incorporates by reference the allegations set forth in paragraphs 1

through 34 above.

36.     The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15

U.S.C. §§ 6101, *et seq.*, sets forth the federal statutory and regulatory program governing

deceptive or abusive telemarketing acts or practices, including, but not limited to, violations

of the national "Do-Not-Call" registry maintained by the FTC.

37.     The FTC, pursuant to § 6102(a)(3)(A), promulgated the Telemarketing Sales

Rule, 16 C.F.R. § 310, which in part prohibits telemarketers from undertaking a pattern of

unsolicited telephone calls that a reasonable consumer would consider coercive or abusive of

such consumer's right to privacy.

38.     The FTC was specifically granted authority to implement and enforce a

national "Do-Not-Call" registry under the provisions of 15 U.S.C. §6102(a)(3)(A).

39.     The initiation of any outbound telephone call to a consumer whose

telephone number is listed on the "Do-Not-Call" registry is deemed an abusive act or

practice in violation of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(b)(1)(iii)(B), unless

the caller (i) has obtained the signed, express agreement showing that consumer's authorization to make calls, or (ii) has an established, prior business relationship with the consumer, and that consumer has not stated that he or she does not wish to receive outbound telephone calls.

40.     Additionally, it is an abusive telemarketing act or practice in violation of 16 C.F.R. § 310.4(b)(1)(iii)(A) for a telemarketer to make outbound telephone calls to any consumer who has specifically requested not to be contacted by the telemarketer.

41.     The term "telemarketing" means a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and which involved more than one interstate telephone call. 16 C.F.R. § 310.2(cc).

42.     A "telemarketer" means any person who, in connection with a telemarketing transaction, initiates or receives telephone calls to or from a customer. 16 C.F.R. § 310.2(bb).

43.     "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity. 16 C.F.R. § 310.2(v).

44.     A "customer" is any person who is, or may be required to pay for goods or services offered through telemarketing. 16 C.F.R. § 310.2(l).

45.     The term "seller" means any person who, in connection with a telemarketing campaign, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. 16 C.F.R. § 310.2(z).

46.     An "outbound telephone call" is a telephone call initiated by a telemarketer to induce the purchase of goods or services. 16 C.F.R. § 310.2(u).

47.     "Established business relationship" means a relationship between a seller and a consumer based on: (1) the consumer's purchase, rental, or lease of the seller's goods or services, or a financial transaction between the consumer and seller, within 18 months

8

immediately preceding the date of a telemarketing call or (2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three months immediately preceding the date of a telemarketing call. 16 C.F.R. § 310.2(n).

48.     Defendants are a "seller" or "telemarketer" that employ "outbound telephone calls" for the purpose of "telemarketing" extended automobile warranties and have engaged in abusive telemarketing acts or practices in violation of the Telemarketing Sales Rule, as alleged herein. In fact, it appears that the Defendants have not even accessed the FTC "Do Not Call" list for Arkansas area codes.

49.     Under 15 U.S.C. § 6103(a), whenever an Attorney General of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the FTC under section 6102 of this title, the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the FTC, to obtain damages, restitution, or other compensation on behalf of residents of such State, or to obtain such further and other relief as the court may deem appropriate.

50.     Per 15 U.S.C. § 6103(b) and 16 C.F.R. § 310.7(a), prior to bringing suit to enforce the requirements of the Telemarketing and Consumer Fraud and Abuse Prevention Act and its corresponding regulation, an Attorney General must provide written notice to the FTC. [A copy of the Notice of Initiation of Legal Action against Defendant that was provided to the FTC in this matter is attached hereto as Exhibit 1.]

**B.  The Telephone Consumer Protection Act and 47 C.F.R. § 64.1200**

51.     The State incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

52.     The Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Telemarketing Sales Rule, 47 C.F.R. § 64.1200, set forth the federal statutory and regulatory program relating to automatic telephone dialing systems and artificial or prerecorded messages.

53.     Pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), it is unlawful for any person to initiate any telephone call, other than a call made for emergency purposes or with prior express consent of the called party, using any automatic telephone dialing system or an artificial or prerecorded voice to a cellular telephone service.

54.     Pursuant to 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2), it is unlawful for any person to initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the express consent of the called party, unless the call: (1) is made for emergency purposes, (2) is not made for a commercial purpose, (3) is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation, (4) is made to any person with whom the caller has an established business relationship at the time the call is made, or (5) is made by or on behalf of a tax-exempt nonprofit organization.

55.     Pursuant to 47 U.S.C. § 227(d)(3)(a) and 47 C.F.R. § 64.1200(b), all artificial or prerecorded telephone messages shall: (1) at the beginning of the message, state clearly the business, individual, or other entity that is responsible for initiating the call and (2) during or after the message, state clearly the telephone number, other than that of the autodialer or prerecorded message player that placed the call, of such business, other entity, or individual.

56.     The terms "automated telephone dialing system" and "autodialer" mean equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 C.F.R. § 64.1200(f)(1).

57.     An "established business relationship" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the 18 months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.  47 C.F.R. § 64.1200(f)(4).

58.     An "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise. 47 C.F.R. § 64.1200(f)(13).

59.     The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. 47 C.F.R. § 64.1200(f)(12).

60.     Defendants have used an automatic telephone dialing system and an artificial or prerecorded voice to call both cellular and residential telephone lines for a "commercial purpose," including "unsolicited advertisements" and "telephonic solicitations," without first having an "established business relationship" with such persons. In addition, the Defendants have failed to state clearly the entity that is responsible for initiating the call at the beginning of the message and has failed to state clearly the telephone number of that entity.

61.     Pursuant to 47 U.S.C. § 227(f)(1), whenever the Attorney General of a State has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of the Telephone Consumer Protection Act, the State may bring a civil action on behalf of its residents to enjoin such calls.

62.     Pursuant to 47 U.S.C. § 227(f)(1), the Attorney General may further receive $500.00 in damages for each violation of the Telephone Consumer Protection Act in such civil action. If the Court finds that the defendant willfully or knowingly violation the Telephone Consumer Protection Act or any regulations promulgated thereunder, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than $1,500.00 in damages for each violation of the Act.

## C. Arkansas Consumer Telephone Privacy Act

63.     The State incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

64.     ARK. CODE ANN. §§ 4-99-401, *et seq.*, otherwise known as the Arkansas Consumer Telephone Privacy Act, sets forth the State's statutory program governing telemarketing to those Arkansas residents affirmatively objecting to unsolicited telephone solicitations.

65.     Pursuant to ARK. CODE ANN. § 4-99-404(1), the Attorney General shall establish a statewide database composed of a list of telephone numbers of consumers who object to receiving telephone solicitations.

66.     ARK. CODE ANN. § 4-99-404(2)(C)(i) provides that the database may include Arkansas consumers who have registered for the national "Do-Not-Call" registry established and maintained by the FTC pursuant to 16 C.F.R. § 310.4.

67.     Pursuant to ARK. CODE ANN. § 4-99-405(1), it is a violation of the Arkansas Consumer Telephone Privacy Act to make or transmit a telephone solicitation to the telephone number of any consumer included in the then-current database maintained by the Attorney General. The Arkansas database has been merged with and is now maintained concurrently with the FTC database.

68.     Likewise, under ARK. CODE ANN. § 4-99-405(3), it is a violation of the Arkansas Consumer Telephone Privacy Act to make or transmit a telephone solicitation if that telephone solicitation violated the national "Do-Not-Call" rule set out in 16 C.F.R. § 310.4.

69.     A "consumer" is any person who has been assigned in the State of Arkansas any residential telephone line and corresponding telephone number. ARK. CODE ANN. § 4-99-403(1).

70.     The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase, or rental of, or investment in property, goods, or services, which telephone call or message is transmitted to any consumer, but such term does not include a call or message to any person made with that person's prior written express invitation or permission, a call or message to any consumer with whom the telephone solicitor has a prior or existing business relationship. ARK. CODE ANN. § 4-99-403(2).

71.     "Person" means any individual, group, unincorporated association, limited or general partnership, Limited Liability Corporation, corporation, professional fund raiser, charitable organization, or other business entity. ARK. CODE ANN. § 4-99-403(3).

72.     The term "prior or existing business relationship" means a relationship in which some financial transaction has transpired between the consumer and the telephone

solicitor or its affiliates within the 36 months immediately preceding the contemplated

telephone transaction, but the term shall not include the solicitation wherein the consumer

has merely been subject to a telephone solicitation by or at the behest of the telephone

solicitor within the 36 months immediately preceding the contemplated telephone

solicitation. ARK. CODE ANN. § 4-99-403(5).

73.     Defendants are each a "person" who has made "telephone solicitations"

regarding extended automobile warranties to "consumers" that are enrolled in the database

of those Arkansans objecting to such telemarketing calls.

74.     ARK. CODE ANN. § 4-99-407(a) provides that any violation by a person of

the prohibitions set out in ARK. CODE ANN. § 4-99-405 shall constitute an unfair or

deceptive act or practice as defined by ARK. CODE ANN. §§ 4-88-101 to –115 of the

Arkansas Deceptive Trade Practices Act.

75.     Pursuant to ARK. CODE ANN. § 4-99-407(b), all authority granted to the

Attorney General under the Arkansas Deceptive Trade Practices Act shall be granted to and

available to the Attorney General for the enforcement of the Arkansas Consumer Telephone

Privacy Act.

### D. The Caller Identification Blocking by Telephonic Sellers Act

76.     The State incorporates by reference the allegations set forth in paragraphs 1

through 34 above.

77.     ARK. CODE ANN. §§ 4-99-301, *et seq.*, otherwise known as the Caller

Identification Blocking by Telephonic Sellers Act, sets forth the State's statutory program

governing caller identification blocking.

78.     ARK. CODE ANN. § 4-99-302(b)(1) provides that it shall be unlawful for any

person making or transmitting a telephone solicitation by any method to display or cause to

14

be displayed a fictitious or misleading name or telephone number on an Arkansas resident's telephone caller identification service.

79.     A "person" means any individual, group, unincorporated association, limited or general partnership, Limited Liability Corporation, corporation, professional fund raiser, charitable organization, or other business entity. ARK. CODE ANN. § 4-99-302(6).

80.     The term "telephone solicitation" means the initiation of a telephone call or message for encouraging the purchase or rental of or investment in property, goods, or services, which telephone call or message is transmitted to any consumer. ARK. CODE ANN. § 4-99-302(7).

81.     A "consumer" is any person to whom has been assigned in the State of Arkansas any telephone line and corresponding telephone number. ARK. CODE ANN. § 4-99-302(3).

82.     The term "caller identification service" means a service offered by a telecommunications utility that provides caller identification information to a device capable of displaying the information. ARK. CODE ANN. § 4-99-302(1).

83.     Defendants are a person who has made or transmitted a "telephone solicitation" and displayed or caused to be displayed a fictitious or misleading name or telephone number on the "caller identification service" of a "consumer."

84.     ARK. CODE ANN. § 4-99-303(a) provides that any violation by a person of the prohibitions set out in ARK. CODE ANN. § 4-99-302 shall constitute an unfair or deceptive act or practice as defined by ARK. CODE ANN. §§ 4-88-101 to –115 of the Arkansas Deceptive Trade Practices Act.

85.     Pursuant to ARK. CODE ANN. § 4-99-303(b)(1), all remedies, penalties, and authority granted to the Attorney General under the Arkansas Deceptive Trade Practices Act

shall be granted to and available to the Attorney General for the enforcement of the Caller Identification Blocking by Telephonic Sellers Act.

**E. The Arkansas Deceptive Trade Practices Act**

86.     The State incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

87.     ARK. CODE ANN. §§ 4-88-101, *et seq.*, otherwise known as the Arkansas Deceptive Trade Practices Act, sets forth the State's statutory program governing deceptive and unconscionable trade practices.

88.     ARK. CODE ANN. § 4-88-107(a)(10) provides that it shall be unlawful to engage in unconscionable, false, or deceptive acts or practices in business, commerce, or trade.

89.     Pursuant to ARK. CODE ANN. § 4-88-113(a)(1), the Attorney General may bring a civil action seeking to prevent persons from engaging in the use or employment of any prohibited practices.

90.     Under the provisions of ARK. CODE ANN. §§ 4-88-104 and 4-88-113(a)(1), the Attorney General may seek an injunction prohibiting any person from engaging in any deceptive or unlawful practice.

91.     Pursuant to ARK. CODE ANN. § 4-88-113(a)(3), any person who violates the provisions of the Arkansas Deceptive Trade Practices Act may be assessed a civil penalty of up to $10,000.00 per violation.

92.     Likewise, under the provisions of ARK. CODE ANN. § 4-88-113(e), any person who violates the provisions of the Arkansas Deceptive Trade Practices Act shall be liable to the Office of the Attorney General for all costs and fees, including, but not limited

to, expert witness fees and attorney's fees, incurred by the Office of the Attorney General in the prosecution of such actions.

93.    Pursuant to ARK. CODE ANN. § 4-88-113(d)(1), every person who directly or indirectly controls another person who is in violation of or liable under the Arkansas Deceptive Trade Practices Act and every partner, officer, or director of another person who is liable thereunder shall be jointly and severally liable for any penalties assessed and any monetary judgments awarded in any proceeding for civil enforcement of the provisions of the Arkansas Deceptive Trade Practices Act, provided that the persons to be held jointly and severally liable knew or reasonably should have known of the existence of the facts by reason of which the violation or liability exists.

94.    A "person" is an individual, organization, group, association, partnership, corporation, or any combination thereof. ARK. CODE ANN. § 4-88-102(3).

95.    Defendants are a "person" who has engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade, *to wit:* (1) placing telemarketing calls to Arkansas residents enrolled in the national "Do-Not-Call" registry maintained by the FTC and (2) causing to be displayed a fictitious or misleading telephone number on Arkansas residents' telephone caller identification services.

**F. ARK. CODE ANN. § 5-63-204**

96.    The State incorporates by reference the allegations set forth in paragraphs 1 through 34 above.

97.    ARK. CODE ANN. § 5-63-204 sets forth the State's statutory program governing the use of automated dialing and messaging systems.

98.    ARK. CODE ANN. § 5-63-204(a)(1) provides that it is unlawful for any person to use a telephone for the purpose of offering any goods or services for sale, or for

conveying information regarding any goods or services for the purpose of soliciting the sale or purchase of the goods or services, when the use involves an automated system for the selection and dialing of telephone numbers and the playing of recorded messages when a message is completed to the called number.

99.     Defendants have used an automated system for the selection and dialing of telephone numbers and the playing of recorded messages in the offer of the sale of extended automobile warranties.

100.     Under the terms of ARK. CODE ANN. § 5-63-204(c)(1), the Attorney General may seek injunctive relief to enforce the provisions of Arkansas law relating to the use of automated dialing and message systems.

101.     Pursuant to ARK. CODE ANN. § 5-63-204(c)(2), the Attorney General is entitled to reasonable attorney's fees and court costs in any civil action filed to enforce the terms of ARK. CODE ANN. § 5-63-204.

**WHEREFORE**, the above premises considered, the State of Arkansas *ex rel.* Dustin McDaniel, Attorney General, respectfully requests that this Honorable Court, upon determination of the facts by a Jury:

(A)     Issue an injunction, pursuant to 15 U.S.C. § 6103(a), 47 U.S.C. § 227(f)(1), and ARK. CODE ANN. §§ 4-88-104 and 5-63-204(c)(1), requiring the Defendants to adhere to those requirements of law outlined herein;

(B)     Impose a civil penalty, pursuant to 47 U.S.C. § 227(f)(1), against the Defendants in the amount of $1,500 per violation for each violation of the Telephone Consumer Protection Act proved at the trial of the matter;

(C)     Impose a civil penalty, pursuant to ARK. CODE ANN. § 4-88-113(a)(3), against the Defendants in the amount of $10,000.00 per violation for each

violation of the Arkansas Consumer Telephone Privacy Act, the Caller

Identification Blocking by Telephonic Sellers Act, and the Arkansas

Deceptive Trade Practices Act proved at the trial of this matter;

(D)     Issue an order, pursuant to ARK. CODE ANN. §§ 4-88-113(e) and 5-63-

204(c)(2), requiring the Defendants to pay the State's costs in this

investigation and litigation, including, but not limited to, attorney's fees; and

(E)     Grant all other relief that may be just and appropriate.

Respectfully Submitted,

**DUSTIN McDANIEL**
**ATTORNEY GENERAL**

By:

**Kevin Wells**, Ark. Bar No. 2007213
Assistant Attorney General
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas 72201
kevin.wells@arkansasag.gov
(501) 682-2007

**Eric B. Estes**, Ark. Bar No. 98210
Sr. Asst. Attorney General
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas 72201
eric.estes@arkansasag.gov
(501) 682-8090

19



THE ATTORNEY GENERAL
STATE OF ARKANSAS
DUSTIN McDANIEL

Kevin Wells
Assistant Attorney General
Direct dial: (501) 682-8063
E-mail: kevin.wells@arkansasag.gov

Dustin McDaniel
Attorney General

May 7, 2010

Michael Tankersley, Esq.
U.S. Federal Trade Commission
600 Pennsylvania Ave., NW
Room H-284A
Washington, DC 20580

Re:     Notice of Initiation of Legal Action

Dear Mr. Tankersley:

        Pursuant to 15 U.S.C. § 6103(b) and 16 C.F.R. § 310.7(a), the State of Arkansas
is providing the Federal Trade Commission with this Notice of Initiation of Legal Action
under the Telemarketing and Consumer Fraud and Abuse Prevention Act. Enclosed you
will find a copy of the draft Complaint against US Fidelis, Inc., f/k/a National Auto
Warranty Services, d/b/a Dealer Services and its directors, Darain Atkinson and Cory
Atkinson.

        Thank you for your time and consideration in this matter. If you have any
questions regarding this Complaint, please feel free to contact me at any time. This
notice, and the relevant Complaint draft, are also being sent to you by e-mail at
mtankersley@FTC.gov.

Sincerely,

Kevin Wells
Assistant Attorney General

Enclosures