IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

STATE OF ARKANSAS, *ex rel.*
DUSTIN McDANIEL, ATTORNEY GENERAL                                    **PLAINTIFF**

v.                                    **CASE NO. 4:10-CV-00378-SWW**

US FIDELIS, INC. f/k/a
NATIONAL AUTO WARRANTY SERVICES,
DARAIN E. ATKINSON, and
CORY C. ATKINSON                                                     **DEFENDANTS**

---

### CONSENT JUDGMENT AND PERMANENT INJUNCTION
### BETWEEN PLAINTIFF AND DEFENDANT US FIDELIS, INC.

---

### PREAMBLE

This matter is before the Court upon the agreement of the parties subsequent to the filing

of a Complaint by the Attorney General of Arkansas alleging that Defendant US Fidelis, Inc.,

formerly known as National Auto Warranty Services, Inc., d/b/a Dealer Services (hereinafter,

"US Fidelis" or "Defendant US Fidelis") and its owners, Defendants Darain Atkinson and Cory

Atkinson, violated the Telemarketing and Consumer Protection Fraud and Abuse Prevention Act,

15 U.S.C. §§ 6101, *et seq.*, the Telemarketing Sales Rule, 16 C.F.R. § 310, the Telephone

Consumer Protection Act, 47 U.S.C. § 227, 47 C.F.R. § 64.1200, the Arkansas Consumer

Telephone Privacy Act, ARK. CODE ANN. § 4-99-401, *et seq.*, the Caller Identification Blocking

by Telephonic Sellers Act, ARK. CODE ANN. § 4-99-301, *et seq.*, the Arkansas Deceptive Trade

Practices Act, ARK. CODE ANN. § 4-88-101, *et seq.*, and ARK. CODE ANN. § 5-63-204. By signing

this entry, Defendant US Fidelis submits to the personal jurisdiction of this Court and consents to

- 1 -

19318835v1

the entry of this Consent Judgment and Permanent Injunction ("Judgment") pursuant to ARK. CODE ANN. § 4-88-113.

Defendant US Fidelis hereby consents to the Court's finding of the following facts and conclusions of law, to the imposition of this Judgment and to the rights of Plaintiff to enforce this Judgment.

Contemporaneous with the filing of this Judgment between the Attorney General of Arkansas and the Defendant US Fidelis, Defendant US Fidelis is entering into similar agreements with the Attorneys General of the States and Commonwealths of Idaho, Iowa, Kansas, Missouri, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Washington, and Wisconsin (hereinafter collectively referred to as the "Participating States").

## I.     GENERAL PROVISIONS

This Court, recognizing that Plaintiff, State of Arkansas, by and through counsel, the Attorney General of Arkansas, Dustin McDaniel, and Defendant US Fidelis have consented to the entry of this Judgment, finds as follows:

1.1     The Court has jurisdiction over the parties and the subject matter of this litigation.

1.2     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), which provides, in part: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same district, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." Under the terms of 28 U.S.C. § 1391(c), a "corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Venue is also proper in this Court pursuant to 47 U.S.C. § 227(f)(4), which provides, in part: "Any civil action brought under [the Telephone Consumer Protection Act] in a district court of the United States

- 2 -

may be brought in the district wherein the defendant ... transacts business or wherein the violation occurred or is occurring[.]" The Arkansas Deceptive Trade Practices Act, ("DTPA") ARK. CODE ANN. § 4-88-101 *et seq*., governs the business practices of the Defendant US Fidelis.

1.3     Plaintiff, State of Arkansas, by and through Counsel, the Attorney General of Arkansas, Dustin McDaniel, has authority to commence these proceedings under the authority of ARK. CODE ANN. § 4-88-113, and by virtue of this statutory and common law authority to protect the interests of the citizens of the State of Arkansas. This Judgment shall be governed by the laws of the State of Arkansas and all applicable Federal law.

1.4     This Judgment is entered into by Defendant US Fidelis as a free and a voluntary act and with full knowledge and understanding of the nature of the proceedings and the obligations and duties imposed by this Judgment.

1.5     Nothing in this Judgment constitutes any agreement by the Parties concerning the characterization of the amounts paid pursuant to this Judgment for purposes of the Internal Revenue Code or any state tax laws.

1.6     This Judgment shall not bar the Attorney General or any local, state, federal, or other governmental entity from enforcing other laws or rules within their jurisdiction against the Defendant US Fidelis as to any of Defendant US Fidelis's business practices, including those alleged in the Complaint. Nothing in this Judgment shall affect the admissibility of this Judgment in any proceeding. Moreover, nothing in this Judgment shall be deemed to waive any rights of Defendant US Fidelis to argue the inadmissibility of this Judgment in any proceeding other than an action by the Attorney General to enforce this Judgment.

1.7     Nothing contained in this Judgment shall be construed to waive any individual right of action by a consumer.

19318835v1

1.8    Defendant US Fidelis shall not represent or imply that the Attorney General approves of Defendant US Fidelis's past business practices.

1.9    The Parties acknowledge that this agreed Judgment is in their mutual best interests and is preferable to expensive litigation concerning Plaintiff's allegations in this state, as well as other states, and Defendant US Fidelis's defenses to those allegations. Thus, the Parties agree as follows:

## II.    DEFINITIONS

The following are the definitions for the words and terms for purposes of this Judgment:

2.1    "Affiliate" means a business entity that is owned by, operated by, controlled by, or under common control of US Fidelis.

2.2    "Bankruptcy Case" means the chapter 11 case pending for US Fidelis, Inc. in the Bankruptcy Court, case number 10-41902.

2.3    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Missouri.

2.4    A statement or communication is "Clear and Conspicuous" if it is readily understandable and presented in such size, color, contrast, location and audibility, compared to the other matter with which it is presented, as to be readily understood. If such statement modifies, explains or clarifies other information with which it is presented, it must be presented in close proximity to the information it modifies and in a manner so as to be readily noticed and understood.

2.5    "Consumer Claim" shall have the same definition and meaning as set forth in the US Fidelis Bankruptcy Plan.

2.6    "Contract Obligor," also referred to as an "Administrator" or "Provider," means the company on whose behalf Defendant US Fidelis advertised, marketed, entered into, and sold

- 4 -

Vehicle Service Contracts to consumers and whose responsibility it was to pay for any repairs covered under the contracts.

2.7     Except where specifically noted otherwise, "Defendant" means US Fidelis, Inc., formerly known as National Auto Warranty Services, Inc., doing business as Dealer Services, operating under its own name or any other business names, including all other persons acting in concert or participation with Defendant US Fidelis, directly or indirectly, or acting on behalf of Defendant US Fidelis or at Defendant US Fidelis's direction, through any corporate device, partnership or association, jointly and severally, including all persons and entities that receive notice of this Judgment.

2.8     "Effective Date" means the date on which this Judgment is entered.

2.9     "Spoofing" means using any means to block, disguise or falsify the identity of the originator that (a) fails to comply with state and federal laws, or (b) fails to transmit or display the originator's telephone or the telephone number of the company selling a product or service that a consumer can call during regular business hours to be placed on a do-not-call list.

2.10    "Telemarketing" or "Telephone Solicitation" means any telephone call or message for the purpose of encouraging or inducing the purchase of goods or services or means any definition provided in any federal, state, or local law defining that term. However, nothing in this Judgment shall be construed to affect, restrict, limit, waive, or alter the definition of "Telemarketing" or "Telephone Solicitation" under the laws and statutes of the states, and nothing in this Judgment shall be construed to limit the authority of the Attorneys General of each of the Participating States to enforce federal or state laws and statutes, including those regarding "Telemarketing" and "Telephone Solicitations."

2.11    "US Fidelis Consumer Restitution Fund" means the consumer restitution fund that

- 5 -

is created as part of the US Fidelis Bankruptcy Plan and designed to pay Consumer Claims.

2.12    "US Fidelis Consumer Restitution Fund Distribution Procedures" means the procedures for liquidating Consumer Claims and distributing funds from the US Fidelis Consumer Restitution Fund.

2.13    "Vehicle Service Contract" means a contract or agreement (a) that contains a separately stated consideration for a specific duration to perform the repair, replacement or maintenance of a motor vehicle and includes vehicle protection products, commonly referred to as product warranties; or (b) that provides indemnification for repair, replacement or maintenance of a motor vehicle due to an operational or structural defect in materials, workmanship or normal wear and tear; and (c) or as such term is defined by state law. Such Vehicle Service Contract may or may not include additional provisions for incidental payment of indemnity under limited circumstances, including but not limited to, towing, rental and emergency road service. The term "Vehicle Service Contract" shall also include any contract, agreement or certificate, including engine additive product warranties, whereby US Fidelis agreed to refund to a consumer the full amount of the purchase price that the consumer paid for a Vehicle Service Contract if certain terms and conditions are met.

2.14    "Written Solicitation" or "Written Communication" shall include, but is not limited to, solicitations and communications on paper, on the internet, or electronically (i.e., e-mail, instant messaging, etc.).

### III.    REPRESENTATIONS AND WARRANTIES

3.1    Defendant US Fidelis warrants and represents that it was engaged in the business of advertising, marketing, selling and promoting the sale of Vehicle Service Contracts to consumers. Defendant US Fidelis further acknowledges that it is the proper party to this Judgment. Defendant US Fidelis warrants and represents, subject to the prior approval of the

- 6 -

Bankruptcy Court, that the individual(s) signing this Judgment is fully authorized to enter into this Judgment and to legally bind Defendant US Fidelis to all of the terms, conditions and injunctions of this Judgment.

3.2    Plaintiff and Defendant US Fidelis warrant and represent that they negotiated the terms of this Judgment in good faith.

## IV.    BACKGROUND

4.1    Defendant US Fidelis is a Missouri corporation with its principal place of business formerly located at 100 Mall Parkway, Wentzville, Missouri 63385.

4.2    Defendant US Fidelis conducted business under the name National Auto Warranty Services, Inc., until it changed its name on January 22, 2009.

4.3    National Auto Warranty Services, Inc. also engaged in business under the name Dealer Services.

4.4    At all times relevant to this action, prior to December 31, 2009 (the "Applicable Period"), Defendant US Fidelis advertised, offered for sale, entered into, and sold Vehicle Service Contracts to consumers who resided in the State of Arkansas.

4.5    By December 31, 2009, Defendant US Fidelis ceased advertising, marketing, offering, selling, and entering into Vehicle Service Contracts with consumers.

4.6    On March 1, 2010, Defendant US Fidelis commenced the Bankruptcy Case by petitioning for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

4.7    On or about March 11, 2010, the United States Trustee appointed an official committee to represent the interest of all unsecured creditors in the Bankruptcy Case.

4.8    On March 9, 2010 and April 13, 2010, the Bankruptcy Court entered interim and final orders appointing Scott Eisenberg of Amherst Partners LLC (collectively "Amherst") as the Chief Restructuring Officer of US Fidelis.  Amherst had no management authority at US Fidelis

- 7 -

during the Applicable Period when the violations referenced in Section V below occurred. Accordingly, Defendant US Fidelis's representations regarding the Findings of Facts below are based solely on information obtained by Amherst in connection with its subsequent role as Chief Restructuring Officer and during Bankruptcy Court and other proceedings.

4.9   As of the Effective Date of this Judgment, the Bankruptcy Case is still pending.

4.10   US Fidelis is in the process of liquidating its remaining assets pursuant to the US Fidelis Bankruptcy Plan.

4.11   Defendant US Fidelis acknowledges that Plaintiff's action is one brought pursuant to the Attorney General's police and regulatory powers in enforcing the states' consumer protection laws, and that as such, the action is exempt from the Bankruptcy Code's automatic stay pursuant to 11 U.S.C. § 362(b)(4).

## V.   **FINDINGS OF FACT**

5.1   During the Applicable Period, Defendant US Fidelis repeatedly violated the following statutes and Substantive Rules: Telemarketing and Consumer Protection Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101, *et seq.*, the Telemarketing Sales Rule, 16 C.F.R. § 310, the Telephone Consumer Protection Act, 47 U.S.C. § 227, 47 C.F.R. § 64.1200, the Arkansas Consumer Telephone Privacy Act, ARK. CODE ANN. § 4-99-401, *et seq.*, the Caller Identification Blocking by Telephonic Sellers Act, ARK. CODE ANN. § 4-99-301, *et seq.*, the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, *et seq.*, and ARK. CODE ANN. § 5-63-204.

5.2   Defendant US Fidelis engaged in the advertising and sale of Vehicle Service Contracts on behalf of Providers who agreed to pay repairs covered under the contracts.

5.3   Defendant US Fidelis entered into marketing agreements with the Providers to perform the advertising, marketing and sale of these Vehicle Service Contracts.

- 8 -

5.4     The parties to the Vehicle Service Contracts were the consumers, who were the purchasers, and the Providers, who agreed to pay repairs covered under the contracts.

5.5     Defendant US Fidelis failed to disclose to consumers that Defendant US Fidelis was selling the Vehicle Service Contracts on behalf of the Providers.

5.6     Defendant US Fidelis engaged in a pattern and practice of failing to inform consumers during the oral sale transaction that the contracts Defendant US Fidelis sold were not with the Defendant US Fidelis but were administered by and were with the Providers.

5.7     Defendant US Fidelis engaged in a pattern and practice of failing to inform consumers during the oral sale transaction that the consumer's continued relationship under the Vehicle Service Contract would not be with the Defendant US Fidelis.

5.8     Defendant US Fidelis used a variety of techniques, methods and practices to market and sell Vehicle Service Contracts, including Telemarketing and Written Solicitations in the form of media advertisements and direct mail to consumers.

### *VEHICLE SERVICE CONTRACTS*

5.9     Defendant US Fidelis created the false and misleading impression that the consumer was contracting with the Defendant US Fidelis and that the Defendant US Fidelis would pay consumers' repair costs when such was not the case.

5.10    Defendant US Fidelis provided consumers with inconsistent and inadequate information regarding the performance, characteristics, uses, and benefits of the Vehicle Service Contracts it sold.

5.11    Defendant US Fidelis had a pattern and practice of falsely stating or misrepresenting to consumers that product warranty and vehicle protection products contracts ("product warranty") had the same characteristics as common vehicle service contracts, including but not limited to falsely representing or inferring that the product warranty provided a

- 9 -

19318835v1

pro-rata refund over the life of the contact.

5.12    Defendant US Fidelis falsely stated or misrepresented that consumers would receive "bumper-to-bumper" coverage, "gold" coverage, or coverage of "just about anything mechanical that can go wrong" with the consumers' motor vehicles.

5.13    Defendant US Fidelis falsely stated or misrepresented that the Vehicle Service Contracts Defendant US Fidelis sold could provide the same terms and coverage as a manufacturer's warranty.

5.14    Despite Defendant US Fidelis's representations regarding coverage, the Vehicle Service Contracts it sold contained material restrictions, limitations and exclusions that significantly limited the value and use of the contract.

5.15    Defendant US Fidelis failed to disclose the material terms, restrictions, limitations and exclusions of its Vehicle Service Contracts in solicitations and marketing contacts with consumers.

5.16    The Vehicle Service Contracts contained an inconspicuous "Exclusions" section which listed numerous components or services not covered by the contracts.

5.17    The Vehicle Service Contracts containing the "Exclusions" section was only sent to the consumer after the consumer purchased the contract and made the down payment.

5.18    Some consumers did not receive the written service contract for weeks or months and some consumers never received the contracts at all.

5.19    Defendant US Fidelis advertised, marketed and solicited individual consumers to enter into Vehicle Service Contracts via the radio, television, direct mail pieces, telemarketing calls, and the US Fidelis website, www.usfidelis.com.

### *DEFENDANT US FIDELIS'S DIRECT MAIL MARKETING PRACTICES*

5.20    Defendant US Fidelis advertised and misrepresented the nature of the Vehicle

- 10 -

19318835v1

Service Contracts as "warranties," "factory warranties," or "extended warranties" when in fact the product being sold was not a "warranty," "factory warranty," or "extended warranty."

5.21    A "factory warranty" or "extended warranty" can only be offered and sold by an automobile manufacturer as provided in the federal Moss-Magnuson Warranty Act, 15 U.S.C. § 2301 et al.

5.22    Defendant US Fidelis represented that Defendant US Fidelis was an authorized seller of "extended warranties" through their solicitations and by using the name, "National Auto Warranty Services."

5.23    Defendant US Fidelis failed to disclose that Defendant US Fidelis was really offering to sell a Vehicle Service Contract and/or a vehicle protection product contract and not an extended motor vehicle warranty.

5.24    Defendant US Fidelis represented that its purported "extended warranty" offers were affiliated with an automobile manufacturer.

5.25    Defendant US Fidelis represented that its "extended warranty" offers were associated with a motor vehicle dealership from which the consumer purchased their motor vehicle by referencing the make and model of the consumer's vehicle and urging the consumer to "extend the factory warranty coverage."

5.26    Defendant US Fidelis mailed direct mail solicitations under the name "Dealer Services" rather than its corporate name, i.e. US Fidelis, in a further attempt to create the impression that Defendant US Fidelis was selling extended warranties offered by the manufacturer or dealer.

5.27    Defendant US Fidelis's direct mail solicitations often referenced the manufacturer of the consumer's motor vehicle, for example adding "Mazda Notification," which further misled

- 11 -

and confused the consumer into believing that Defendant US Fidelis was affiliated or associated with the manufacturer of the consumer's motor vehicle.

5.28    Defendant US Fidelis failed to disclose that Defendant US Fidelis was not affiliated and had no relationship with the manufacturers who produced the consumers' motor vehicles.

5.29    Defendant US Fidelis failed to disclose that Defendant US Fidelis was not affiliated and had no relationship with the dealers who sold the consumers their motor vehicles.

5.30    Defendant US Fidelis represented that consumers' motor vehicle warranties were expired, were expiring, or were about to expire.

5.31    Contrary to Defendant US Fidelis's representations, many consumers who received Defendant US Fidelis's direct mail solicitations reported that their auto warranties were not expired or about to expire.

5.32    Contrary to Defendant US Fidelis's representations, Defendant US Fidelis could not substantiate the truth of the representation that consumers' motor vehicle warranties were expired, were expiring, or were about to expire.

5.33    Defendant US Fidelis represented that consumers' motor vehicles might be unsafe or subject to a recall.

5.34    Contrary to Defendant US Fidelis's representations, many consumers who received Defendant US Fidelis's direct mail solicitations reported that their vehicles were not found to be unsafe and were not subject to recall.

5.35    Contrary to Defendant US Fidelis's representations, Defendant US Fidelis could not substantiate the truth of the representation that "motor vehicles might be unsafe or subject to a recall."

5.36    Defendant US Fidelis represented that consumers had a limited time to contact Defendant US Fidelis to purchase the "extended warranties" for their motor vehicles, when in fact the offer was actually available for a longer period of time.

5.37    Defendant US Fidelis represented that its offer was "exclusive" and not made to the general public when in fact identical or nearly identical offers were made to consumers across the country.

5.38    Defendant US Fidelis represented that it had a preexisting relationship with the consumer.

5.39    Contrary to Defendant US Fidelis's representations, many consumers reported no previous relationship with Defendant US Fidelis existed.

### DEFENDANT US FIDELIS'S TELEMARKETING PRACTICES

5.40    Defendant US Fidelis conducted sales through inbound Telemarketing calls in which consumers called US Fidelis sales representatives after receiving direct mail solicitations from the Defendant US Fidelis, after consumers heard and/or saw a radio or television advertisement for Defendant US Fidelis or after consumers viewed the US Fidelis website, www.usfidelis.com.

5.41    Defendant US Fidelis or its agent also conducted sales through the use of outbound Telemarketing, including the use of an automatic dialing and announcing device ("ADAD") in which Defendant US Fidelis offered to sell its service and additive contracts through pre-recorded telemarketing calls, often referred to as "robo-calls."

5.42    Defendant US Fidelis's or its agent's pre-recorded Telemarketing calls did not promptly and clearly identify that the call was being made on behalf of Defendant US Fidelis in order to make a sale to the consumer.

5.43    Defendant US Fidelis's or its agent's pre-recorded Telemarketing calls purported

- 13 -

to give consumers the option to speak with a sales representative, but consumers attempting to select this option for the purpose of asking to be placed on Defendant US Fidelis's internal do-not-call list were disconnected or hung up on by Defendant US Fidelis, or, if connected, Defendant US Fidelis's sales representatives hung up on the caller.

5.44    Defendant US Fidelis's or its agent's pre-recorded Telemarketing calls purported to give consumers the option to put themselves on the Defendant US Fidelis's internal do-not-call list by pressing a certain number, but the internal do-not-call list did not in fact result in no further calls to consumers.

5.45    In some instances, Defendant US Fidelis or its agent told consumers to call a different number to be placed on Defendant US Fidelis's internal do-not-call list, but consumers exercising this option discovered that the telephone number provided was not in service.

5.46    Defendant US Fidelis's Telemarketing practices impaired consumers' efforts to notify Defendant US Fidelis and its agents that the consumers did not wish to receive solicitation calls by or on behalf of the Defendant US Fidelis.

5.47    Consumers continued to receive Telemarketing calls from Defendant US Fidelis and its agents after the consumers had asked not be called again and/or to have their names placed on Defendant US Fidelis's internal do-not-call list.

5.48    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of service contracts to telephone numbers in Arkansas which are listed with the National Do Not Call Registry maintained by the Federal Trade Commission.

5.49    Consumers who registered with the National Do Not Call Registry continued to receive Defendant US Fidelis's telemarketing calls after they had advised Defendant US Fidelis's sales representatives that they were registered on the National Do Not Call Registry and

19318835v1

that they wanted the calls stopped.

5.50    Defendant US Fidelis and its agents did not have prior express invitation or permission to make the Telemarketing calls to the consumers who were registered with the National Do Not Call Registry.

5.51    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of service contracts to cell phone numbers, emergency lines and hospitals.

5.52    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of service contracts and failed to transmit caller identification information.

5.53    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of service contracts and failed to check that the numbers Defendant US Fidelis was calling were not on the National Do Not Call Registry.

5.54    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of service contracts and engaged in "Spoofing" by blocking, disguising, or falsifying the identity of Defendant US Fidelis and failed to transmit or display the originator's telephone number or the telephone number of Defendant US Fidelis that consumers could call during regular business hours to be placed on a do-not-call list.

5.55    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of Vehicle Service Contracts and failed to register as a telemarketer in Arkansas.

5.56    Defendant US Fidelis and its agents placed Telemarketing calls in connection with its marketing of Vehicle Service Contracts and failed or refused to place consumers on internal do-not-call lists upon request by the consumer.

5.57    Defendant US Fidelis and its agents placed Telemarketing calls in connection

- 15 -

with its marketing of Vehicle Service Contracts and provided false or misleading caller identification information, including preventing the display of caller identification, using methods that bypassed, circumvented, or disabled caller identification, or using methods that misled the caller as to the identification of the caller or the caller's phone number.

5.58    During the Telemarketing calls, Defendant US Fidelis secured the agreement and a down payment over the phone. Following receipt of the down payment, Defendant US Fidelis mailed the actual Vehicle Service Contract to the consumer. This was the first opportunity the consumers had to review the contract and see its actual terms.

### *DEFENDANT US FIDELIS'S GENERAL MISLEADING AND DECEPTIVE BUSINESS PRACTICES*

5.59    Defendant US Fidelis represented an offer to be Defendant US Fidelis's "final" offer to a consumer, when in fact Defendant US Fidelis had never made any previous attempts to contact the consumer.

5.60    Defendant US Fidelis represented that its offers of the "extended warranty" plans were the consumer's final chance to purchase such plans, when in fact the same offer or a substantially similar offer would still be available in the future.

5.61    By representing that its offers were only valid for a limited time or were the consumers' final chance to purchase a purported "extended warranty," Defendant US Fidelis created a false sense of urgency that an offer would expire when no actual expiration date for the offer existed.

5.62    Defendant US Fidelis represented an affiliation, connection, sponsorship, or association with, or certification by, a third party, such as a manufacturer, government agency or other entity, when in fact Defendant US Fidelis had no such relationships with the referenced third party.

- 16 -

5.63    The representations made by Defendant US Fidelis's direct mail solicitations and during the course of Defendant US Fidelis's telemarketing calls caused consumers to believe that the Vehicle Service Contracts they were purchasing would provide comprehensive, top-quality coverage for their motor vehicles and would be easy to use, when such was not the case.

5.64    Defendant US Fidelis sold or offered for sale Vehicle Service Contracts without having been licensed and/or registered as required under state law.

### *DEFENDANT US FIDELIS'S REFUND PRACTICES*

5.65    During its sales presentations, Defendant US Fidelis informed consumers that they could obtain full refunds of the purchase price of the Vehicle Service Contract within thirty days of purchase and obtain a pro rata refund thereafter.

5.66    When consumers asked to obtain a copy of the service contract prior to purchase, Defendant US Fidelis informed the consumers that it could not send out the contract, but reassured the consumers that they could cancel the contract during the first thirty days and receive a full refund.

5.67    Defendant US Fidelis failed to disclose the difficulty consumers would face if they attempted to cancel the contract.

5.68    Defendant US Fidelis made it difficult for consumers to cancel their contracts by not accepting certified letters from consumers which contained the consumers' written requests for cancellation, by leading consumers to believe that a telephone call would result in cancellation, and by hanging up on consumers who called Defendant US Fidelis to attempt to cancel.

5.69    In those instances where consumers succeeded in cancelling a vehicle protection product contract, Defendant US Fidelis refused to refund any money if any portion of the vehicle protection product was used or was not returned.

- 17 -

5.70    In those instances where consumers succeeded in cancelling the Vehicle Service Contract, Defendant US Fidelis frequently refunded less than the amount owed to the consumer or provided no refund at all.

5.71    Defendant US Fidelis had a pattern and practice of paying only part of the refund due to consumers, including for example, declaring on a particular day that all consumers would be paid only sixty percent of the refund due with Defendant US Fidelis converting the other forty percent.

5.72    Defendant US Fidelis had a pattern and practice of deducting a fee from the refund, referred to as a "processing fee" even though this fee was neither authorized by the contracts nor disclosed to the consumers at the time of the sale.

## VI.    CONCLUSIONS OF LAW

6.1    Defendant US Fidelis is a "person" as that term is defined in ARK. CODE ANN. § 4-88-102(5), 4-99-301(6), and 16 C.F.R. § 310.2(v). Defendant US Fidelis was, at all times relevant herein, engaged in the business, commerce, or trade of effecting consumer transactions by advertising, marketing, and selling Vehicle Service Contracts to individuals in the State of Arkansas.

6.2    Defendant US Fidelis was, at all times relevant herein, engaged in "telephone solicitations" as that term is defined in ARK. CODE ANN. § 4-99-403(6) and 47 U.S.C. 227(a)(4) of the Telephone Consumer Protection Act.

6.3    Defendant US Fidelis's practice of advertising Vehicle Service Contracts for sale and failing to clearly and conspicuously disclose, in close proximity to the words stating the offer, all material exclusions, reservations, limitations, modifications, or conditions of such offers, is an unfair and deceptive act in violation of the Arkansas Deceptive Trade Practices Act, ARK. CODE ANN. § 4-88-101, *et seq.*

- 18 -

6.4     Defendant US Fidelis's practice of representing that its Vehicle Service Contracts had sponsorship, approval, performance characteristics, accessories, uses, or benefits that they did not have, is an unfair and deceptive act in violation of the DTPA, ARK. CODE ANN. § 4-88-107(a)(1).

6.5     Defendant US Fidelis's practice of representing that its Vehicle Service Contracts were of a particular standard, quality, grade, style, prescription, or model, if they were not, is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(1).

6.6     Defendant US Fidelis's practice of representing that its Vehicle Service Contracts were available to the consumer for a reason that did not exist is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.7     Defendant US Fidelis's practice of representing that it had a sponsorship, approval, or affiliation that it did not have, including, but not limited to, representing that their purported extended warranty plans were affiliated with the automobile manufacturers and/or the motor vehicle dealerships from which the consumers purchased their motor vehicles, is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.8     Defendant US Fidelis's practice of representing that its Vehicle Service Contracts involved or did not involve a warranty, a factory warranty, an extended warranty, a manufacturer's warranty a disclaimer of warranties or other rights, remedies, or obligations, when that representation was false, deceptive or misleading, is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.9     Defendant US Fidelis's practice of accepting substantial down payments from consumers for Vehicle Service Contracts and then failing to deliver the goods and/or services contracted for or return the down payments to the consumers, is an unfair and deceptive act in

19318835v1

violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.10    Defendant US Fidelis's practice of engaging in a pattern or practice of failing to provide prompt refunds to consumers, issuing refunds that were less than the amount required by contract or state law, or denying valid refunds and converting refunds, is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.11    Defendant US Fidelis's practice of entering into Vehicle Service Contracts when Defendant US Fidelis knew of the inability of the consumer to receive a substantial benefit from the contracts is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.12    Defendant US Fidelis's practice of entering into Vehicle Service Contracts on terms the Defendant US Fidelis knew were substantially one-sided in favor of the Defendant US Fidelis is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.13    Defendant US Fidelis's practice of making misleading statements of opinion and fact regarding its Vehicle Service Contracts on which the consumer was likely to rely to the consumer's detriment is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107.

6.14    Defendant US Fidelis's practice of engaging in a pattern or practice of initiating Telephone Solicitations to residential telephone subscribers in Arkansas whose telephone numbers were listed on the National Do Not Call Registry, is an unfair and deceptive act in violation of the Arkansas Consumer Telephone Privacy Act, ARK. CODE ANN. § 4-99-405(3), and is further prohibited by the TCPA, 47 U.S.C. 227 and 47 C.F.R. 64.1200(c)(2).

6.15    Defendant US Fidelis's practice of engaging in a pattern or practice of willfully

- 20 -

and knowingly initiating telephone calls to residential telephone numbers using an artificial or prerecorded voice, such as an ADAD, to deliver a phone solicitation, without the prior consent of the called parties, is a violation of the TCPA, 47 U.S.C. 227(b)(1)(B) and 47 C.F.R. 64.1200(a)(2).

6.16    Defendant US Fidelis's practice of making false or misleading statements, including, but not limited to, representing that Defendant US Fidelis was affiliated with an automobile manufacturer, that consumers could choose to be placed on Defendant US Fidelis's internal do-not-call list, and that consumers would receive a full refund if they cancelled their contract within thirty days, is an unfair and deceptive act in violation of the ADTPA, ARK. CODE ANN. § 4-88-107(a)(10).

6.17    Defendant US Fidelis's practice of engaging in Telephone Solicitations and intentionally blocking or intentionally authorizing or causing to be blocked the disclosure of the telephone number from which a telephone solicitation is made is a violation of the Arkansas Caller Identification Blocking by Telephonic Sellers Act, ARK. CODE ANN. § 4-99-302(a), and is further prohibited by the TCPA, 47 U.S.C. 227(e).

19318835v1

## VII.   ORDER

For purposes of affecting this Consent Judgment Entry and Order, it is therefore ORDERED, ADJUDGED AND DECREED that:

7.1     Plaintiff's request for a Declaratory Judgment is GRANTED; and it is therefore DECLARED that the acts and practices set forth in the Findings of Fact and enumerated in the Conclusions of Law set forth above in Paragraphs 6.4 through 6.17 violate the ADTPA, ARK. CODE ANN. § 4-88-101, *et seq.* in the manner set forth therein.

7.2     Plaintiff's request for a Declaratory Judgment is GRANTED; and it is therefore DECLARED that the acts and practices set forth in the Findings of Fact and enumerated in the Conclusions of Law set forth above in Paragraphs 6.14, 6.15, and 6.17 violate Arkansas's Consumer Telephone Privacy Act, ARK. CODE ANN. § 4-99-401, *et seq.* and the TCPA, 47 U.S.C. § 227 and 47 C.F.R. § 64.1200, in the manner set forth therein.

7.3     Plaintiff's request for a Declaratory Judgment is GRANTED; and it is therefore DECLARED that the acts and practices set forth in the Findings of Fact and enumerated in the Conclusions of Law set forth above in Paragraph 6.17 violate Arkansas's Caller Identification Blocking by Telephonic Sellers Act, ARK. CODE ANN. § 4-99-301, *et seq.*, and also violate the TCPA, 47 U.S.C. § 227(e), in the manner set forth herein.

7.4     Defendant US Fidelis and/or its owners, agents, representatives, salespersons, employees, subcontractors, independent contractors, successors, assigns, and all persons acting on behalf of Defendant US Fidelis, directly or indirectly, through any corporate device or private device, partnership or association, including any person or entity which purchases any interest in the business and continues to operate the business, in connection with any consumer transaction, are hereby PERMANENTLY ENJOINED from violating Arkansas's Consumer Telephone Privacy Act, Ark. Code Ann. § 4-99-401, *et seq.*; the TCPA, 47 U.S.C. § 227 and 47 C.F.R. §

- 22 -

64.1200; Arkansas's Caller Identification Blocking by Telephonic Sellers Act, Ark. Code Ann. § 4-99-301, *et seq.*, and the ADTPA, Ark. Code Ann. § 4-88-101, *et seq.* Defendant US Fidelis and/or its owners, agents, representatives, salespersons, employees, subcontractors, independent contractors, successors, assigns, and all persons acting on behalf of Defendant US Fidelis, directly or indirectly, through any corporate device or private device, partnership or association, including any person or entity which purchases any interest in the business and continues to operate the business, in connection with any consumer transaction, are hereby PERMANENTLY ENJOINED from engaging in any Telemarketing sales or "Telephone Solicitations" as that term is defined by ARK. CODE ANN. § 4-99-403(6), 47 U.S.C. 227(a)(4), and the federal Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et. seq., the Telemarketing Sales Rule, 16 CFR Part 310, and other state and local laws as such acts and practices relate to Defendant US Fidelis. This Paragraph, which never expires, prohibits Defendant US Fidelis from engaging in telephone solicitations to Arkansas consumers and prohibits Defendant US Fidelis from registering with the Attorney General's Office to conduct telephone solicitations in Arkansas as such acts and practices relate to Defendant US Fidelis.

7.5     Defendant US Fidelis and/or its owners, agents, representatives, salespersons, employees, subcontractors, independent contractors, successors, assigns, and all persons acting on behalf of Defendant US Fidelis, directly or indirectly, through any corporate device or private device, partnership or association, including any person or entity which purchases any interest in the business and continues to operate the business, in connection with any consumer transaction, are hereby PERMANENTLY ENJOINED from engaging in the advertising, marketing, solicitation, selling, or administration of Vehicle Service Contracts within the State of Arkansas.

### *CONSUMER RESTITUTION AND PAYMENT TO THE STATE*

7.6     The State of Arkansas shall be awarded restitution for consumers harmed by the

- 23 -

unfair and deceptive acts and practices of Defendant US Fidelis with such restitution to be paid in accordance with the terms and conditions set forth in the US Fidelis Consumer Restitution Fund Agreement and the US Fidelis Consumer Restitution Fund Distribution Procedures.

7.7    Pursuant to the US Fidelis Bankruptcy Plan, Defendant US Fidelis shall contribute on the effective date of the Plan the sum of Thirteen Million Dollars ($13,000,000.00) in cash to the US Fidelis Consumer Restitution Fund ("Fund"), which shall be used to satisfy consumer claims filed in the US Fidelis Bankruptcy Case and consumer claims filed directly against the Fund. Payment of individual consumer claims and Attorney General restitution claims shall be made in accordance with the terms and conditions set forth in the US Fidelis Consumer Restitution Fund Agreement and the US Fidelis Consumer Restitution Fund Distribution Procedures.

7.8    IT IS FURTHER ORDERED that the Arkansas Attorney General is awarded a claim for civil fines and penalties against Defendant US Fidelis in the amount of Six Million Five-Hundred Eighty-Six Thousand Dollars ($6,586,000). Said civil fine or penalty shall constitute an allowed claim in the Bankruptcy Case and shall be treated in accordance with the priority set forth in the US Fidelis Bankruptcy Plan.

7.9    The Attorney General's attorneys' fees and investigative costs will be reimbursed in accordance with the US Fidelis Consumer Restitution Fund Agreement.

### *PENALTIES FOR FAILURE TO COMPLY*

7.10    IT IS FURTHER ORDERED that any violation of the terms of this Judgment shall constitute contempt. Service of any action for contempt shall be complete upon mailing a certified copy of such action to undersigned counsel for Defendant US Fidelis.

7.11    IT IS FURTHER ORDERED that in the event the Arkansas Attorney General must initiate legal action or incur any costs to compel Defendant US Fidelis to abide by this

19318835v1

Judgment, upon proof of the violation, Defendant US Fidelis shall be liable to the Arkansas Attorney General for any such costs associated with proving that violation, including, but not limited to, a reasonable sum for attorneys' fees, provided that such additional claims can be timely adjudicated and presented to the bankruptcy court.

7.12    Failure of the Arkansas Attorney General to timely enforce any term, condition, or requirement of this Judgment shall not provide, nor be construed to provide, Defendant US Fidelis a defense for noncompliance with any term of this Judgment or any other law, rule, or regulation; nor shall it stop or limit the Arkansas Attorney General from later enforcing any term of this Judgment or seeking any other remedy available by law, rule, or regulation.

7.13    Notwithstanding anything to the contrary, this Judgment shall not apply to Amherst in connection with any of its engagements other than US Fidelis.

7.14    IT IS FURTHER ORDERED that nothing in this Judgment shall in any way preclude any investigation or enforcement action against any of the Defendant US Fidelis's Vehicle Service Contract obligors, administrators or agents under any legal authority granted to the State.

7.15    IT IS FURTHER ORDERED that Defendant US Fidelis shall not represent directly or indirectly or in any way whatsoever that the Court or the Arkansas Attorney General has sanctioned, condoned, or approved any part or aspect of Defendant US Fidelis's business operation.

19318835v1

## VIII.   <u>JURISDICTION RESERVED</u>

This Court shall retain jurisdiction to enforce compliance with this Judgment. In addition, enforcement of this Judgment shall also be before the Bankruptcy Court.

IT IS SO ORDERED this ⎩ day of October, 2012.


_Kristine G. Baker_
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE

SUBMITTED BY:

**FOR THE ARKANSAS ATTORNEY GENERAL, DUSTIN McDANIEL**

/s/ Sarah R. Tacker

_____          9/24/2012
Sarah R. Tacker                        DATE
Arkansas Bar No. 2002-189
Senior Assistant Attorney General
Consumer Protection Division
Arkansas Attorney General's Office
323 Center Street, Suite 500
Little Rock, AR 72201
(501) 682-1321
sarah.tacker@arkansasag.gov
(501) 682-8118 (facsimile)

**FOR THE DEFENDANT US FIDELIS, INC.**

_____          9/18/12
SCOTT EISENBERG                        DATE
Chief Restructuring Officer

/s/ Laurel Stevenson                          9/12/2012
_____          _____
LAUREL STEVENSON                       DATE
Arkansas Bar # 2012094
Lathrop & Gage LLP
1845 S. National
Springfield, MO 65804
(417) 886-2000
(417) 886-9126 (facsimile)
lstevenson@lathropgage.com
BRIAN T. FENIMORE
Missouri Supreme Court No. 41308
Lathrop & Gage LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
(816) 292-2000
(816) 292-2001 (facsimile)
bfenimore@lathropgage.com
Counsel for US Fidelis, Inc. as Defendant
and as Debtor and Debtor in Possession
(Bankruptcy Case)

- 27 -